**Michelle K. EVERETT,**
**Plaintiff–Appellee,**

v.

**DICKINSON & COMPANY, INC., an**
**Iowa Corporation, Defendant–**
**Appellant.**

No. 95CA0923.

Colorado Court of Appeals,
Div. II.

April 18, 1996.

Rehearing Denied May 23, 1996.

Certiorari Denied Dec. 23, 1996.

Salmon, Godsman & Nicholson, P.C., P. Randolph Nicholson, Englewood, for Plaintiff–Appellee.

Berliner Zisser Walter & Gallegos, P.C., David A. Zisser, Curt R. Foust, Denver, for Defendant–Appellant.

Opinion by Judge HUME.

Defendant, Dickinson & Company, Inc., seeks review of the district court order deny-ing its motion for a stay of proceedings pending arbitration. We affirm.

Plaintiff, Michelle K. Everett, opened an investment account with Warren Hamm (broker), who at the time was employed by Jesup, Josephthal Securities Company, Inc., a securities brokerage firm (brokerage firm). Plaintiff signed a document entitled "Customer Agreement" containing an arbitration clause drafted by and in favor of Bear, Stearns & Co., a clearing broker used by broker and his then brokerage firm. In industry parlance, a clearing broker, who has no client contact, places and executes orders with the securities exchange at the direction of the introducing broker (here the broker or brokerage firm) that solicits orders and makes recommendations to customers. Although the signing occurred in connection with establishing the investment account, neither the broker nor the brokerage firm was a party or signatory to this agreement.

Broker subsequently went to work for defendant and continued to handle plaintiff's account. Although plaintiff received account statements from defendant on occasion, she averred that she never opened an account with defendant, never signed any customer agreements with defendant, and was "unaware of any relationship" she may have had with defendant. Plaintiff did sign another customer agreement containing an arbitration clause, entitled "Margin Account Agreement and Loan Consent," drafted by and in favor of another clearing broker, Wertheim Schroder & Co., who apparently replaced Bear, Stearns & Co. as broker's and defendant's clearing broker. Neither broker nor defendant was a signatory or a party to this margin agreement.

While broker was in defendant's employ, he allegedly executed risky trades resulting in a substantial loss of plaintiff's funds. Plaintiff filed suit against defendant and broker alleging breach of contract, breach of fiduciary duty, fraud, breach of implied covenant of good faith and fair dealing, negligent supervision, and outrageous conduct. Defendant moved for a stay of the proceedings pending arbitration and contended that it had standing to invoke arbitration because it was a third-party beneficiary of the arbitra-

tion clauses contained in the customer agreements that plaintiff had signed in favor of the two clearing brokers.

The trial court denied defendant's motion and ruled that because plaintiff had never sought a relationship with defendant she could not be bound by a purported agreement between the parties.

■ Defendant claims that the two clearing broker agreements clearly express the intent of plaintiff and the clearing brokers that plaintiff's introducing broker be a third-party beneficiary. We disagree.

■ A customer agreement between a broker and an investor to transact in securities involves interstate commerce and therefore is covered by the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1983). *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (FAA created a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act); *O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893 (10th Cir.1992) (federal law governs issue of whether nonsignatories fall within scope of an arbitration agreement); *Ayers v. Prudential–Bache Securities, Inc.*, 762 P.2d 743 (Colo.App.1988).

■ When a dispute between a broker and an investor concerns an issue of contract, the application of federal law is governed by generally accepted principles of contract law. *McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771 (2d Cir.1992).

■ A valid and enforceable arbitration provision divests a court of jurisdiction over all arbitrable issues. *Eychner v. Van Vleet*, 870 P.2d 486 (Colo.App.1993).

■ In resolving a motion to compel arbitration, the court must first inquire whether there exists a valid agreement to arbitrate between the parties to the action. *Eychner v. Van Vleet, supra; see United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

■ A court may refuse to compel arbitration only upon a showing that there is no agreement to arbitrate or that the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision. *Jefferson County School District No. R–1 v. Shorey*, 826 P.2d 830 (Colo.1992).

■ In general, only parties to an agreement containing an arbitration provision can compel or be subject to arbitration. However, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement and may bring an action on such contract if that is the intent of the parties. *Eychner v. Van Vleet, supra; McPheeters v. McGinn, Smith & Co., supra.*

■ A third-party beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party. *McPheeters v. McGinn, Smith & Co., supra.* Such an intent to benefit a third party must be apparent from the construction of the contract in light of all surrounding circumstances, and the intent of the parties is the key inquiry when determining whether a nonsignatory is a third-party beneficiary entitled to enforce the agreement. *O'Connor v. R.F. Lafferty & Co., supra.*

The majority of federal courts have found that an introducing broker is not an intended third-party beneficiary of a customer agreement between a clearing broker and an investor. *See Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 795 F.2d 1111 (1st Cir.1986); *McPheeters v. McGinn, Smith & Co., supra; Taylor v. Investors Associates, Inc.*, 29 F.3d 211 (5th Cir.1994); *O'Connor v. R.F. Lafferty & Co., supra; Conway v. Icahn Co.*, 787 F.Supp. 340 (S.D.N.Y.1990); *Lester v. Basner*, 676 F.Supp. 481 (S.D.N.Y.1987) (where no intent to make defendants third-party beneficiaries shown, defendants were merely incidental beneficiaries). *But see Nesslage v. York Securities, Inc.*, 823 F.2d 231 (8th Cir.1987) (trading broker who was not a party to mar-

gin agreement allowed to enforce arbitration clause as disclosed agent of clearing broker and as intended third-party beneficiary).

Here, defendant was not a party to the two agreements that plaintiff executed on behalf of the two clearing brokers; thus, it can compel arbitration only if the contract between plaintiff and the clearing brokers reflects their mutual intent to confer this benefit upon defendant.

No evidence of any intent to benefit defendant can be inferred from the Bear, Stearns & Co. Customer Agreement. The agreement states that: "You agree that your broker is a third-party beneficiary of this Agreement, and that the terms and conditions hereof, including the arbitration provision, shall be applicable to all matters between or among any of you, your broker or Bear Stearns." However, at the time the agreement was executed, plaintiff's broker was employed by the brokerage firm and defendant had no relationship with either plaintiff or Bear, Stearns & Co. Therefore, the term "broker" in the provision quoted above refers to Jesup, Josephthal Securities Co. and Hamm. Thus, it cannot evidence any intent of plaintiff or Bear, Stearns & Co. to confer a benefit on defendant.

Additionally, even if we assume plaintiff and Bear, Stearns & Co. intended to confer a benefit on the brokerage firm, defendant could compel arbitration only as a successor to the brokerage firm's status as a third-party beneficiary. However, the agreement does not contain any language expressly or impliedly providing that its terms and conditions apply to successors or assigns of the original introducing broker. *See Taylor v. Investors Associates, Inc., supra* (omission of certain language from customer agreement should be regarded as purposeful). Therefore, defendant, as a successor introducing broker, cannot compel arbitration under the Bear, Stearns & Co. agreement. *See Van Luven v. Rooney, Pace, Inc.,* 195 Cal.App.3d 1201, 241 Cal.Rptr. 248 (Cal.App.1987) (successor introducing broker cannot enforce arbitration provision in agreement between customer and clearing broker where. introducing broker's relationship with customer did not exist at time agreement was executed).

The second agreement, which plaintiff executed on a form provided by Wertheim Schroder & Co., was a margin agreement that allowed plaintiff to trade on credit. Defendant argues that its status as a third-party beneficiary derives from the following statement contained in that agreement: "The undersigned's broker [plaintiff's introducing broker] has authorized you [Wertheim Schroder & Co.] to enter into this agreement with the undersigned [plaintiff] on its behalf, and the terms and conditions hereof, including the pre-dispute arbitration provision, shall be applicable to all matters between [sic] the undersigned, the undersigned's broker and you."

Because defendant has presented no other evidence that would show the parties' intent to confer a benefit upon it, the question is whether this contractual provision, together with the circumstances surrounding the execution of the agreement, are sufficient to evidence the parties' intent to confer a such benefit. *O'Connor v. R.F. Lafferty & Co., supra; E.B. Roberts Construction Co. v. Concrete Contractors, Inc.,* 704 P.2d 859 (Colo.1985).

■■■ Interpretation of a contract is generally a question of law. *Union Rural Electric Ass'n v. Public Utilities Commission,* 661 P.2d 247 (Colo.1983).

We read the language relied upon by defendant, specifically the phrase "shall be applicable to all matters between [sic] the undersigned, the undersigned's broker and you" to mean that the arbitration provision is to apply to disputes that concern all three entities, *i.e.,* plaintiff, Wertheim Schroder & Co., and the plaintiff's introducing broker. Here, Wertheim Schroder & Co. is not named as a party in plaintiff's suit against defendant; therefore, the terms and conditions of the margin agreement, including the arbitration provision, do not apply to the dispute.

The arbitration provision contained in the margin agreement further supports our interpretation. That provision states:

The undersigned [plaintiff] agrees, and by carrying an account for the undersigned you [the clearing broker] agree, that all controversies which may arise between us concerning any transaction of the construction, performance or breach of this or any other agreement between us pertaining to securities and other property, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

Significantly, this language does not refer to the introducing broker, which omission we regard as purposeful and from which we can reasonably infer that the parties did not intend that the introducing broker be a beneficiary of the arbitration clause. *See Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc., supra.*

Defendant contends that plaintiff's intent to designate it as a third-party beneficiary is evident from the fact that plaintiff received account statements from it for several months prior to plaintiff's execution of the margin agreement. However, plaintiff averred that, at the time she signed the margin agreement, she was unaware of any relationship she may have had with defendant. The trial court resolved this conflict and held that plaintiff "never sought a relationship" with defendant and therefore could not be bound by a purported agreement between the parties.

Even if we were to deem the contractual language to be ambiguous, the extrinsic evidence offered here does not support defendant's contention. Rather, the trial court's finding that plaintiff never sought a relationship with defendant, which has record support and is binding on appeal, can reasonably support the inference that plaintiff did not intend to confer a benefit on defendant as a third-party beneficiary. Obviously, if plaintiff was unaware of any relationship between herself and defendant, she could not have intended to benefit defendant merely by signing a margin agreement with a clearing broker.

Hence, the plain language of the brokerage agreements as well as the majority of persuasive authorities cited support the trial

court's refusal to stay court proceedings pending arbitration here.

The order is affirmed.

STERNBERG, C.J., and JONES, J., concur.