GATX MANAGEMENT SERVICES, LLC, a Delaware limited liability company, and GATX Product Services, LLP, a Delaware limited liability partnership, Plaintiffs,

v.

Darrell WEAKLAND, an individual, Seminole Transportation and Trading, Inc., an Oklahoma corporation, Defendants.

No. CIV. 01–B–1246.

United States District Court,
D. Colorado.

Nov. 14, 2001.

1160

Terence C. Gill, Sherman & Howard, Denver, CO, Hardy Ray Murphy, III, Thelen, Reid & Priest, LLP, Los Angeles, CA, for plaintiffs.

Mark D. Sullivan, Jacobs, Chase, Frick, Kleinkopf & Kelley LLC, Denver, CO, Donald Lee Kahl, John F. Heil, III, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Defendants Darrell Weakland ("Weakland") and Seminole Transportation and Trading, Inc. ("Seminole") move to compel arbitration and stay the proceedings. Additionally, Weakland moves to stay the proceedings pending determination of the motion to compel arbitration. Plaintiffs GATX Management Services, LLC ("GMS") and GATX Product Services, LLP ("GPS")(collectively, "GATX") oppose the motions. The motions are adequately briefed and oral argument was held on November 8, 2001. For the reasons set forth below, Defendants' motions to compel arbitration and stay the proceedings are granted. Because the motion to compel arbitration is resolved, Defendant Weakland's motion to stay the proceedings pending determination of the motion to compel is denied as moot. Jurisdiction is proper under 28 U.S.C. § 1332.

## I. Background

Defendant Darrell Weakland was hired by Plaintiff GPS in March 1999. The terms and conditions of his employment were set forth in an Employment Agreement. GMS owned GPS at the time of Weakland's employment with GPS.

The Employment Agreement contains an arbitration clause which states, in pertinent part:

The terms of this Agreement have been carefully considered and agreed upon by the Company and Weakland and represent the sole obligations of the company and Weakland with respect to Weakland's employment with the Company. If a dispute arises out of or related to this Agreement and the dispute cannot be settled through direct discussions, the Company and Weakland agree that they shall first endeavor to settle the dispute in an amicable fashion, including the use of a mediator. If such efforts fail to resolve the dispute, then any and all claims, demands, causes of action, disputes, controversies, and other matters in question arising out of or relating to this Agreement, any of its provisions, or the relationship between the parties created by this Agreement, whether sounding in contract, tort or otherwise, whether provided by statute or the common law, for damages or any other relief (all of which are referred to herein as "Claims"), shall be resolved by binding arbitration pursuant to the Commercial Arbitration Rules then in effect with the American Arbitration Association....

*Defendants' Motion, Exhibit 1, Agreement* at ¶ 7.13.

Weakland resigned from his employment with GPS effective June 4, 2001.

Shortly thereafter, he was hired by Seminole Refined Products, Inc., a company related to Seminole.

Plaintiffs initiated this action on July 3, 2001. An *Amended Complaint* was filed on July 20, 2001 alleging: (1) breach of contract (by GPS only against Weakland only), (2) breach of fiduciary duty (against Weakland only), (3) inducing breach of contract, and (4) misappropriation of trade secrets.

On August 22, 2001, Plaintiffs filed a motion for preliminary injunction and a motion for expedited discovery. In September 2001, Defendants filed separate motions to compel arbitration and stay the proceedings. Additionally, Defendant Weakland moved for a stay pending determination of his motion to compel arbitration and stay the proceedings.

## II. Standard

 There is a strong federal policy favoring arbitration for dispute resolution, and this policy "requires a liberal reading of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 n. 27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This means that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See id.* at 24–25, 103 S.Ct. 927; *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir.1995) (stating that "[a]ll doubts are to be resolved in favor of arbitrability") (citations omitted). District courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Notwithstanding this strong federal policy, however, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he

has not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotation marks omitted). As a general rule, therefore, "the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The party seeking to compel arbitration and stay the proceeding has the burden of establishing that the matter is subject to arbitration. *See McCarthy v. Azure*, 22 F.3d 351, 354–55 (1st Cir.1994)("[A] party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate some claims."); *Miletic v. Holm & Wonsild*, 294 F.Supp. 772, 774–75 (S.D.N.Y.1968)("The burden is upon the party seeking a stay to satisfy the court that a matter is referable to arbitration.").

## II. Defendant Weakland's Motion to Compel Arbitration

Defendant Weakland argues that Plaintiff's four claims against him (breach of contract, breach of fiduciary duty, inducing breach of employment agreement, and misappropriation of trade secrets), as well as the motion for preliminary injunction, are all predicated upon the Employment Agreement and the relationship created by the Employment Agreement and, therefore, are subject to arbitration.

At oral argument, Plaintiffs conceded that their breach of contract and breach of fiduciary duty claims are predicated upon the Employment Agreement and, therefore, are subject to arbitration. However, Plaintiffs argue that the claims for tortious inducement of breach of contract and misappropriation of trade secrets, as well as

their motion for preliminary injunction, are not subject to the arbitration provision.

### A. Scope of Arbitration Clause

■■■ The arbitration provision mandates arbitration for "any and all claims, demands, causes of action, disputes, controversies, and other matters in question arising out of or relating to this Agreement, any of its provisions, or the relationship between the parties created by this Agreement." This is undoubtedly a broad arbitration clause as it covers not only those issues arising out of the employment contract, but even those issues with any connection to the contract or to the relationship between the parties. In other cases, courts have concluded that an arbitration provision which includes the phrase "related to" or "in connection with" an agreement constitutes a broad arbitration clause. *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir.2000)(noting the arbitration clause which covered "all disputes or controversies arising under or in connection with this Agreement" was broad because it covered not only those issues arising under the employment contract but also those issues with any connection to the contract), *cert. denied,* 531 U.S. 1192, 121 S.Ct. 1191, 149 L.Ed.2d 107 (2001); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir.1999)(stating that arbitration clause covering "any controversy, claim, or breach arising out of or relating to this Agreement ... is a 'broad' one."). The strong presumption favoring arbitrability " 'applies with even greater force' when such a broad arbitration clause is at issue." *P & P Indus.*, 179 F.3d at 871. "[A]ll claims with 'a significant relationship to the [Agreement,] regardless of the label attached' to them, arise out of and are related to the Agreement." *P & P,* 179 F.3d at 871 (quoting *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir.1996)). Likewise, all claims with a significant connec-

tion to the parties' relationship which was created by the Employment Agreement are subject to arbitration. In determining the scope of an arbitration clause, I focus on the factual allegations in the *Complaint* (or the *Motion for Preliminary Injunction*) rather than the legal causes of action asserted. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 622 n. 9, 625 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

### 1. Inducing Breach of Employment Contract

■■■ First, Plaintiffs argue that their claim of inducing breach of employment contract is beyond the scope of the arbitration agreement because such tortious conduct was never contemplated by the arbitration agreement. The claim alleges that Defendant Weakland induced other GMS employees to breach their employment agreements.

In *Lee v. Grandcor Med. Sys., Inc.,* 702 F.Supp. 252 (D.Colo.1988), the court concluded that the plaintiff's claim for tortious interference with business relations was covered by the parties' arbitration clause. The court focused on the plaintiff's specific allegations regarding the claim:

> During its management of Memorial Hospital and the Lee Clinic pursuant to the Transfer Agreement and the Management Agreement, the Defendants intentionally operated both facilities in a manner intended to interfere with the relationship between Dr. Miles and the Lee Clinic, their patients and other practicing physicians in the Greeley, Colorado area, for the purpose of causing Dr. Lee to remove himself from the Lee Clinic and Memorial Hospital so as to allow Defendants complete control of the facilities.

*Id.* at 255–56. Based on these allegations, the court concluded that the plaintiff's

claim for tortious interference was related to the "performance" of the Management Agreement and, therefore, subject to arbitration. *See id.*

Here, Plaintiffs allege, among other things, that:

> [a]s an officer of GPS, Weakland owed GPS a fiduciary duty not to take any action that would harm GPS and/or its owner, GMS. Despite this obligation, Weakland induced all of the employees of GMS who were based in Denver to resign en masse and to obtain employment together with him at SEMINOLE.

*Amended Complaint* at ¶ 11. Based on the allegations, Plaintiffs' tortious inducement to breach contracts claim is related to Weakland's employment relationship with GPS. Therefore, the claim is subject to arbitration.

■ Next, Plaintiffs argue that the inducing breach of contract claim, as well as the misappropriation of trade secrets claim, is not arbitrable because the alleged conduct occurred after Weakland terminated his employment with GPS. Additionally, Plaintiffs maintain that Defendant Weakland terminated the employment agreement, which revoked the arbitration provision. I disagree.

■ A broad arbitration clause applies to conduct that occurs after the employment contract has been terminated as long as the claim "touches the contract." *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir.2000). In *Brown*, the court concluded that a defamation claim based upon statements made by the employer after the employee's termination were subject to the broad arbitration provision included in the employment agreement. *Id.*

■ Additionally, an arbitration provision in a contract is held to survive the termination of that contract unless the parties expressly or clearly imply an intent to override this presumption. *See Riley*

*Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781–82 (10th Cir.1998); *Encore Prods., Inc. v. Promise Keepers*, 53 F.Supp.2d 1101, 1108–09 (D.Colo.1999). Similarly, the revocation of an arbitration provision requires the express or clear intent of the parties to do so. *See Riley*, 157 F.3d at 781–82. Here, there is no indication that the parties intended to revoke the arbitration clause. Accordingly, Defendant Weakland's motion to compel arbitration is granted as to the inducing breach of contract claim.

**B. Misappropriation of Trade Secrets**

■ Plaintiffs' fourth claim against Defendants alleges that they misappropriated trade secrets. Plaintiffs argue that Defendant Weakland's post-employment (and post-contract repudiation) misappropriation of trade secrets does not arise under or relate to the employment agreement and, therefore, the claim is beyond the scope of the arbitration provision. Again, I look to the factual allegations. The *Amended Complaint* states:

> 14. While employed as an officer of GPS, Weakland was entrusted with confidential information belonging to GPS and GMS, including the plans of GPS and GMS and their operations, including their petroleum trading business; their trading strategies in their operations; the identity of their customers and terms of their agreements with those customers; the identity of their suppliers and the terms of their agreements with those suppliers and the abilities, skills and compensation of GPS's and GMS's employees (the "Trade Secrets").

> 15. The Trade Secrets were not, and are not, generally known to the public and were the subject of reasonable efforts to maintain their confidentiality. Accordingly, the Trade Secrets consti-

tuted trade secret information belonging to GPS under C.R.S. § 7–74–101, et seq.

16. Weakland has misappropriated, improperly used, misused and improperly disclosed the Trade Secrets belonging to GPS and GMS.

17. Weakland has disclosed some and/or all of the Trade Secrets to SEMINOLE.

18. As an officer of GPS, Weakland owed GPS a fiduciary duty not to take any action that would harm GPS and/or its owner, GMS. Despite this obligation, Weakland has misappropriated, misused and improperly disclosed the Trade Secrets belonging to GPS and/or its owner, GMS, to SEMINOLE and others.

*Amended Complaint* at ¶ 14–18.

Based on these allegations, the misappropriation claim against Weakland relates to the Employment Agreement and relates to the relationship between the parties created by the Employment Agreement. Weakland would not have had access to the alleged trade secrets and confidential information but for the employment relationship with GPS. *See Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1517–18 (10th Cir.1995)(compelling arbitration of claims based upon alleged misuse of confidential and proprietary information obtained during the contractual relationship). Additionally, Plaintiffs' breach of the employment agreement claim includes an allegation that Weakland misappropriated trade secrets. The employment contract itself contains a section prohibiting the disclosure of confidential information. *See Motion to Compel, Exhibit 1, Contract* at ¶ 6.1. The agreement states that the covenant not to disclose survives the contract's termination and lists what Plaintiffs are seeking to protect as alleged trade secrets. *See id.* Under these circumstances, the misappropriation of trade secrets claim against Weakland is subject to arbitration.

## C. Motion for Preliminary Injunction

 Finally, Plaintiffs' *Motion for Preliminary Injunction* seeks an order enjoining Defendants Weakland and Seminole from engaging in the misuse and disclosure of Plaintiffs' trade secrets. In their *Motion,* Plaintiffs allege that:

> In sum, Defendants have commenced a campaign of unfairly competing with Plaintiffs based upon the misuse and misappropriation of Plaintiffs' trade secrets, including the specific information that Weakland learned while he was employed concerning the required volume of refined petroleum products that Plaintiffs must move over the pipelines and through the truck racks.

*Motion for Preliminary Injunction* ¶ 24. Based on this allegation, which is a summary of Plaintiffs' *Motion,* the *Motion for Preliminary Injunction* relates to the Employment Agreement and the relationship created by the Employment Agreement. Therefore, the *Motion for Preliminary Injunction* is subject to arbitration.

## IV. Defendant Seminole's Motion to Compel Arbitration

Defendant Seminole acknowledges that it is not a signatory to the Employment Agreement. However, it argues that the doctrine of equitable estoppel allows it to compel arbitration for the inducing breach of employment contract and misappropriation of trade secrets claims against it, as well as the *Motion for Preliminary Injunction.*

 Defendant Seminole relies on an Eleventh Circuit case, *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999), for the proposition that a non-signatory can compel arbitration based on equitable estoppel. Plaintiffs argue that under Tenth Circuit law, a non-signatory may only compel arbitration if he is a

third-party beneficiary to the arbitration agreement.

Seminole argues that the Tenth Circuit and Colorado cases discussing third-party beneficiaries to arbitration agreements do not hold that *only* non-signatories who are third-party beneficiaries to the agreement may compel arbitration. For example, in *Everett v. Dickinson & Co.*, 929 P.2d 10 (Colo.Ct.App.1996), the court explained: "[i]n general, only parties to an agreement containing an arbitration provision can compel or be subject to arbitration. However, a nonparty, *such as* a third-party beneficiary, may fall within the scope of an arbitration agreement and may bring an action on such contract . . . ." *Id.* at 12 (emphasis added). I agree that by merely giving an example of a non-signatory, "such as a third-party beneficiary," who may enforce an arbitration provision does not mean that such third-party is the "only" non-signatory to the agreement allowed to enforce such a provision.

Numerous other courts have held that equitable estoppel allows non-signatories to compel arbitration if there are intertwined claims. *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527–28 (5th Cir.)(agreeing with the intertwined-claims test formulated by the Eleventh Circuit), *cert. denied*, 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000); *MS Dealer*, 177 F.3d at 947; *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir.1993), *cert. denied*, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 841 n. 9 (7th Cir.1981). For example, the *MS Dealer* court held that equitable estoppel allows a non-signatory to compel arbitration in two different circumstances:

First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agree-

ment in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."

*MS Dealer*, 177 F.3d at 947 (citations omitted).

Defendant Seminole argues that both circumstances are present in this case. First, Seminole argues that Plaintiffs' claims against it and the *Motion for Preliminary Injunction* make reference to or presume the existence of a written agreement between GPS and Weakland. I agree.

The misappropriation of trade secrets claim presumes the existence of the Employment Agreement because if Weakland had not been employed by Seminole, he would not have had access to Plaintiffs' trade secrets and, as a result, Seminole would not have had any trade secrets to misappropriate. The *Amended Complaint* alleges that "[w]hile employed as an officer of GPS, Weakland was entrusted with confidential information belonging to GPS and GMS" and that he "disclosed some and/ or all of the Trade Secrets to Seminole." *Amended Complaint* ¶ 14, 17.

The inducing breach of contract claim also presumes the existence of the Em-

ployment Agreement. Plaintiffs allege that "[o]n behalf of Seminole, and with knowledge of the existence of the employment agreements between GMS and its employees in its operations in Denver, Colorado, Weakland induced these other per-sons to breach their employment agreement with GMS and to accept employment with Seminole." *Amended Complaint* ¶ 13. Based on Plaintiffs' allegations, Seminole could not have induced breaches of contracts without Weakland's assistance—and, according to the allegations, Weakland was able to induce breaches of the contracts because of his employment and relationship with GMS.

Finally, as discussed above, the *Motion for Preliminary Injunction,* which seeks an order enjoining Seminole from engaging in the misuse and disclosure of Plaintiffs' trade secrets, alleges that Weakland learned of Plaintiffs' trade secrets during his employment and then disclosed the trade secrets to Seminole. Therefore, the *Motion for Preliminary Injunction* makes reference to and presumes the existence of the Employment Agreement.

Additionally, Seminole argues that the claims against it involve allegations of substantially interdependent and concerted misconduct by both Seminole and Weakland. I agree. The two claims Plaintiffs allege against Seminole, inducing breach of employment agreement and misappropriation of trade secrets, are also alleged against Weakland. And, the *Motion for Preliminary Injunction* is directed at both Seminole and Weakland. The allegations used to support Plaintiffs' claims and the *Motion for Preliminary Injunction* against Seminole are the same allegations used to support their claims against Weakland. Basically, Seminole allegedly induced breach of contract and misappropriated trade secrets because of the conduct of Weakland. The claims against Weakland and Seminole are inherently insepa-

rable. Based on these circumstances, I conclude that the "intertwined-claims" equitable estoppel doctrine should apply and Seminole may compel arbitration of the claims against it, as well as the *Motion for Preliminary Injunction.*

## V. Motions to Stay Proceedings

Defendants also move to stay these proceedings pending arbitration. Because I have determined that all of Plaintiffs' claims are subject to arbitration, under the FAA, I must stay litigation of the entire case pending arbitration. 9 U.S.C. § 3.

## VI. Motion to Stay Proceedings Pending Determination of Motion to Compel

Because I have now determined Weakland's motion to compel arbitration, his motion to stay the proceedings pending determination of that motion is denied as moot.

Accordingly, I ORDER THAT:

(1) Defendant Weakland's motion to compel arbitration and stay the proceedings is GRANTED;

(2) Defendant Seminole's motion to compel arbitration and stay the proceedings is GRANTED; and

(3) Defendant Weakland's motion to stay the proceedings pending determination of the motion to compel is DENIED as moot.