2015 COA 60

**Michael MEISTER, Plaintiff–Appellant,**

v.

**S. Brian STOUT; Anthony DeLollis; Venti Solutions, LLC, a Colorado limited liability company, Defendants–Appellees.**

**Court of Appeals No. 14CA0161**

Colorado Court of Appeals,
Div. IV.

Announced May 7, 2015

El Paso County District Court No. 12CV508, Honorable Maria R. Prudek, Judge

Stinar, Zendejas, Hansen & Gaithe, LLC, M. James Zendejas, Colorado Springs, Colorado, for Plaintiff–Appellant.

Sparks Wilson Borges Brandt & Johnson, P.C., Gregory V. Pelton, Colorado Springs, Colorado, for Defendant–Appellee S. Brian Stout.

Hogan Lovells US, LLP, John W. Cook, Joseph L. Lambert, Colorado Springs, Colorado, for Defendants–Appellees Anthony De-Lollis and Venti Solutions LLC.

Opinion by JUDGE MILLER

¶1 Appellant, Michael Meister, appeals from the district court's ruling compelling arbitration of his claims and from its judgment confirming the arbitration award. We affirm and remand the case for a determination of the appellees' reasonable attorney fees and costs incurred on appeal.

¶2 As a matter of first impression in the state courts of Colorado, we hold that a signatory to an agreement containing an arbitration clause may be equitably estopped from avoiding arbitration when he sues a nonsignatory on claims that (1) presume the existence of that agreement or (2) allege interconnected and concerted misconduct between the nonsignatory and one or more of the signatories related to that agreement.

## I. Background

¶3 Anthony DeLollis and S. Brian Stout founded an information technology company, Venti Solutions, LLC. A few years later, Meister invested in Venti and became a

member of the company by entering into a purchase agreement.

¶ 4 The purchase agreement, signed by Venti, Stout, DeLollis, and Meister, granted Meister a twenty percent interest in Venti in exchange for a capital contribution of $500,000. The agreement also incorporated by reference the Venti operating agreement, which was executed by Stout and DeLollis.[1] The parties to the purchase agreement agreed to be bound by all of the terms and provisions of the operating agreement. The operating agreement includes a dispute resolution article. This article provides that arbitration is the sole and exclusive mechanism for resolving all disputes, and it sets forth arbitration and related procedures.

¶ 5 In 2012, Meister filed suit against De-Lollis, Stout, and Venti. His amended complaint sought dissolution of Venti, recovery of his capital contribution and damages, a declaratory judgment establishing his rights and obligations under the operating agreement, and other relief. DeLollis and Venti moved the district court to compel arbitration under the operating agreement, and the court ordered all of the claims to arbitration. Venti then filed two counterclaims in the arbitration proceeding, one of which was dismissed before the hearing. Following the hearing, the arbitrator dismissed Meister's claims with prejudice and awarded $375,738.70 against him on Venti's breach of contract counterclaim based on his failure to pay the full amount of his capital contribution under the purchase agreement. The district court later confirmed the arbitration award over Meister's objection.

## II. Meister's Claims Against Venti Are Subject to Arbitration

¶ 6 The district court reasoned that all parties to the purchase agreement (which included Venti) were obligated to arbitrate disputes as a result of that agreement's in-

corporation of the operating agreement,[2] and it therefore ordered all claims to arbitration and stayed the litigation proceedings before the court. We affirm the district court's ruling, but for a different reason: we conclude that Meister was equitably estopped from avoiding arbitration of his claims against Venti.

### A. Standard of Review

¶ 7 We review de novo the district court's decision on a motion to compel arbitration. *Lujan v. Life Care Ctrs. of Am.,* 222 P.3d 970, 972 (Colo.App.2009). When the record of the agreement to be construed or enforced consists of documentary evidence, we may base our legal conclusion upon that evidence and need not depend upon the district court's findings and conclusions. *Lane v. Urgitus,* 145 P.3d 672, 680 (Colo.2006); *see Winslow Constr. Co. v. City & Cnty. of Denver,* 960 P.2d 685, 692 n. 11 (Colo.1998).

¶ 8 If a district court reaches the correct result, its judgment may be affirmed on different grounds that are supported by the record. *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402, 406 (Colo.App.2004); *see also Newflower Mkt., Inc. v. Cook,* 229 P.3d 1058, 1061 (Colo.App. 2010).

### B. Venti May Enforce the Arbitration Provisions Against Meister

¶ 9 The operating agreement provides that "any dispute arising out of the agreement" that is not resolved through negotiations or mediation must proceed to arbitration under Colorado's version of the Uniform Arbitration Act (CUAA), sections 13–22–201 to –230, C.R.S.2014. Meister does not contest the arbitrability of his claims against DeLollis and Stout. Nor does he challenge on appeal the arbitrability of Venti's counterclaim against him. Thus, the only arbitrability issue before us is whether Meister's claims

---

1. Though Meister did not execute the operating agreement, he concedes that as a signatory to the purchase agreement he is a party to and bound by the arbitration article of the operating agreement. For convenience we refer to him as a signatory.

2. Defendants also argued to the district court they could compel Meister's claims to arbitration under a third-party beneficiary theory or by asserting equitable estoppel. As the court found the parties bound to arbitrate under general contract principles, it declined to address defendants' additional theories.

against Venti, a nonsignatory to the operating agreement, were subject to arbitration.

### 1. Equitable Estoppel in Arbitration

¶ 10 Arbitration is contractual by nature, and therefore "[i]n general, only parties to an agreement containing an arbitration provision can compel or be subject to arbitration." *Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo.App.1996). Colorado has a strong policy favoring arbitration agreements. *Lane*, 145 P.3d at 678; *City & Cnty. of Denver v. Dist. Court*, 939 P.2d 1353, 1363–64 (Colo.1997). A broad or unrestricted arbitration clause, like the one in this case, gives even greater force to "the strong presumption favoring arbitration." *City & Cnty. of Denver*, 939 P.2d at 1364 (internal quotation marks omitted).

¶ 11 Under Colorado law, both signatory and nonsignatory parties may be bound by an arbitration agreement if so dictated by ordinary principles of contract law. *See Smith v. Multi–Financial Sec. Corp.*, 171 P.3d 1267, 1272 (Colo.App.2007) (citing 1 Martin Domke, *The Law of Practice on Commercial Arbitration* § 13:1 (rev. ed. Supp. 1993)); *see also Lane*, 145 P.3d at 683 (Eid, J., concurring) (When a third-party beneficiary compels arbitration, it is an "unremarkable application of the black-letter" law that a third-party beneficiary may enforce the terms of a contract.); *Parker v. Ctr. for Creative Leadership*, 15 P.3d 297, 298–99 (Colo.App.2000) (holding that nonsignatory third-party beneficiary, who was suing signatory for relief based on signatory's obligations under a contract, was bound by arbitration clause in the contract).

¶ 12 Equitable estoppel may be used to bind parties to arbitration agreements in at least two scenarios. First, as previously

held by another division of this court, a signatory to an arbitration agreement may compel arbitration of a claim brought against it by a nonsignatory plaintiff, so long as the claim arises from the agreement containing the arbitration provision. *See Smith*, 171 P.3d at 1271–74 (collecting cases). Estoppel is proper in this scenario because the nonsignatory plaintiff cannot seek the benefit of the agreement containing the arbitration provision, while at the same time attempting to avoid the arbitration provision of that agreement. *Id.* at 1274.

¶ 13 The second scenario occurs when a signatory asserts a claim arising from a contract against a nonsignatory to that contract. While there are no reported Colorado state court decisions addressing this scenario, many other courts have held that a nonsignatory may estop a signatory from avoiding an arbitration provision under these circumstances and compel arbitration. *See GATX Mgmt. Servs., LLC v. Weakland*, 171 F.Supp.2d 1159, 1165–67 (D.Colo.2001) (collecting cases). This alternative theory of estoppel has been recognized by federal courts of appeal [3] and state courts alike. *See, e.g., Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627–28 (4th Cir.2006) ("When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement ... arbitration is appropriate." (internal quotation marks omitted)); *see also Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947–48 (11th Cir.1999), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009); *Armas v. Prudential Sec., Inc.*, 842 So.2d 210, 212 (Fla.Dist.Ct. App.2003); *Price v. Ernst & Young, LLP*,

---

**3.** The federal courts of appeal developed a substantial body of case law addressing equitable estoppel in the context of commercial arbitration under the Federal Arbitration Act (FAA). *See, e.g., Hill v. G E Power Sys., Inc.*, 282 F.3d 343, 348 (5th Cir.2002); *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir.2001); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S.Ct. 1896, 173

L.Ed.2d 832 (2009). In 2009, the Supreme Court decided that state contract law, not federal law, governs equitable estoppel claims under the FAA. *See Arthur Andersen*, 556 U.S. at 630–32, 129 S.Ct. 1896. Nonetheless, we conclude that the federal appellate courts' reasoning and discussion of equitable estoppel, which, as reflected in the text of our opinion, has been followed in cases decided after *Arthur Andersen*, remains persuasive.

274 Ga.App. 172, 617 S.E.2d 156, 159–60 (2005); *German Am. Fin. Advisors & Trust Co. v. Reed,* 969 N.E.2d 621, 627–28 (Ind.Ct. App.2012); *Thompson v. Witherspoon,* 197 Md.App. 69, 12 A.3d 685, 693–95 (2011); *Truck Ins. Exch. v. Palmer J. Swanson, Inc.,* 124 Nev. 629, 189 P.3d 656, 661–62 (2008); *Hoffman v. Finger Lakes Instrumentation, LLC,* 7 Misc.3d 179, 789 N.Y.S.2d 410, 414–15 (N.Y.Sup.Ct.2005); *Woodhaven Homes, Inc. v. Alford,* 143 S.W.3d 202, 205–06 (Tex. App.2004); 1 Martin Domke, *The Law of Practice on Commercial Arbitration* § 13:8 (3d ed.2014); *but see Ervin v. Nokia, Inc.,* 349 Ill.App.3d 508, 285 Ill.Dec. 714, 812 N.E.2d 534, 542–43 (2004) (declining to adopt this application of equitable estoppel); *Billieson v. City of New Orleans,* 863 So.2d 557, 563 (La.Ct.App.2003) (declining to compel nonsignatory to arbitrate tort claims where party claiming equitable estoppel had not demonstrated it changed its position in justifiable reliance on nonsignatory's conduct); *B.C. Rogers Poultry, Inc. v. Wedgeworth,* 911 So.2d 483, 492–93 (Miss.2005) (requiring proof of detrimental reliance).

¶ 14 Under this second scenario, equitable estoppel applies where a signatory must rely on the terms of a written agreement containing an arbitration provision to assert its claims against a nonsignatory. *See, e.g., GATX Mgmt. Servs.,* 171 F.Supp.2d at 1166 (citing *MS Dealer Serv.,* 177 F.3d at 947). A signatory's claim against a nonsignatory relies on the agreement when it references or presumes the existence of the written agreement containing the arbitration provision. *MS Dealer Serv.,* 177 F.3d at 947 (citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 758 (11th Cir. 1993), *abrogated on other grounds by Arthur Andersen,* 556 U.S. 624, 129 S.Ct. 1896).

¶ 15 Equitable estoppel is also available under this second scenario when a signatory alleges substantially interdependent and concerted misconduct by a nonsignatory and one or more signatories to the agreement. *GATX Mgmt. Servs.,* 171 F.Supp.2d at 1166 (citing *MS Dealer Serv.,* 177 F.3d at 947); *see also Wolford v. Flint Trading, Inc.,* No. 13–cv–02835–WYD–CBS, 2014 WL 3747177, at *5–6 (D.Colo. July 30, 2014). Ap-

plication in this circumstance is limited to misconduct that is intertwined with duties or obligations arising from the underlying contract. *Thomson–CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 779 (2d Cir.1995) (citing *Sunkist Soft Drinks,* 10 F.3d at 757); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,* 741 F.2d 342, 344 (11th Cir.1984), *abrogated on other grounds by Arthur Andersen,* 556 U.S. 624, 129 S.Ct. 1896; *see also Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.,* 176 F.Supp.2d 1091, 1098–99 (D.Colo.2001) (declining to apply equitable estoppel where alleged misconduct was not intertwined with any agreement containing arbitration provision).

### 2. Analysis

¶ 16 We conclude that Meister's claims against Venti are subject to arbitration under the second estoppel scenario.

¶ 17 All of Meister's claims against Venti reference or presume the existence of the operating agreement. One of the six claims is captioned "Breach of Contract" and is based on Venti's alleged breach of the operating agreement; two others expressly allege that Venti violated the operating agreement; and the remaining claims (breach of fiduciary duty, judicial dissolution, and appointment of receiver) arise from Meister's rights and Venti's obligations under the operating agreement. We also note that in each claim, Meister incorporated by reference the background section of his complaint, which repeatedly mentions the operating agreement. Therefore, each of Meister's claims against Venti presumes the existence of, references, and relies on the operating agreement. Consequently, Meister is equitably estopped from avoiding arbitration of his claims against Venti.

¶ 18 Meister's claims alleging interconnected and concerted misconduct among Venti, Stout, and DeLollis provide further support for the order compelling arbitration. In pleading his claims, Meister refers only to actions taken by "Defendants," never assigning alleged misconduct to any defendant individually. Similarly, he asserts identical claims against all defendants, and requests that all defendants be held jointly and sever-

ally liable on a money judgment. Meister's claims therefore allege interconnected and concerted misconduct between the signatories, DeLollis and Stout, and the nonsignatory, Venti. As discussed above, these claims all arise from the underlying operating agreement. Accordingly, for this reason as well, Meister is estopped from avoiding the arbitration provision in the operating agreement. We therefore affirm the district court's order compelling all claims to arbitration.

### III. The District Court Correctly Confirmed the Arbitration Award

¶ 19 The district court found that Meister failed to show that any of the statutory grounds for vacating an arbitration award applied. It further concluded that Meister's lack of candor with the arbitrator regarding his inability to travel, as well as his failure to timely request permission to travel, caused him to be unable to appear at the hearing. We reject Meister's challenges to these rulings.

#### A. Prehearing Proceedings

¶ 20 The Venti operating agreement requires that an arbitration hearing take place not more than sixty days after the selection of an arbitrator. Although originally scheduled for July 9 and 10, 2013, the hearing had to be postponed to September 3 and 4 after Meister failed to pay the deposit required to proceed with arbitration.

¶ 21 Additionally, Meister was under travel restrictions stemming from an unrelated federal indictment in Florida. He did not disclose his criminal proceedings to the arbitrator or to defendants. Meister filed a motion with the arbitrator seeking to appear at the hearing electronically, arguing that his poor health prevented him from attending in person. Meanwhile, defendants discovered Meister's involvement in the criminal proceedings, as reflected in their opposition to the motion. The arbitrator sought to verify Meister's health status with his physician, but Meister refused to make her available. The arbitrator then denied Meister's motion to appear electronically.

¶ 22 Four days before the hearing, Meister, for the first time, sought leave from the federal court in Florida to travel to Colorado for the arbitration hearing. The federal court denied the request, citing the risk of further illness that could delay Meister's upcoming criminal trial. Meister filed a renewed motion with the federal court the next day, and was again denied permission to travel. The arbitration hearing proceeded as scheduled on September 3 with Meister's counsel present. At the start of the hearing, the arbitrator denied Meister's renewed motion to appear electronically. Meister's counsel then elected not to participate in the hearing and left.

#### B. Standard of Review

¶ 23 We review de novo the district court's legal conclusions in confirming the arbitration award. *Levy v. Am. Family Mut. Ins. Co.*, 293 P.3d 40, 43 (Colo.App. 2011). Under the CUAA, a court may decline to confirm an arbitration award only on the limited statutory grounds set forth in section 13–22–223, C.R.S.2014. *See Levy*, 293 P.3d at 49; *see also Sportsman's Quikstop I, Ltd. v. Didonato*, 32 P.3d 633, 634 (Colo.App.2001) (applying similarly worded version of this section as previously codified). These limited grounds do not include the merits of the award, but rather involve "specific instances of outrageous arbitral conduct and egregious departures from the parties' agreed-upon arbitration." *Treadwell v. Vill. Homes of Colo., Inc.*, 222 P.3d 398, 401 (Colo. App.2009) (internal quotation marks and bracket omitted). This deference to arbitrators is so great that some have suggested "judicial review of arbitral awards may be something of a misnomer." *Id.* (citing *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir.2006)).

¶ 24 Nonetheless, Meister contends that the district court erred in confirming the arbitration award. We are not persuaded.

#### C. Analysis

¶ 25 A district court must vacate an arbitration award where, as relevant to this case, the arbitrator "[1] refused to postpone

the hearing upon showing of sufficient cause for postponement, [2] refused to consider evidence material to the controversy, or [3] otherwise conducted the hearing contrary to section 13–22–215 [governing the arbitration process], so as to prejudice substantially the rights of a party to the arbitration proceeding." § 13–22–223(1)(c). The party challenging the award under section 13–22–223(1)(c) must demonstrate that he suffered substantial prejudice as a result of the arbitrator's actions. *Carson v. PaineWebber, Inc.,* 62 P.3d 996, 998–99 (Colo.App.2002).

¶ 26 In *Carson,* a division of this court recognized that meeting this burden requires at least some evidence of how the actions resulted in substantial prejudice. There the appellant alleged the arbitrator had refused to consider documents material to the controversy and further violated his rights by denying his request for a hearing. *Id.* However, the appellant made no showing of the evidence contained in the proffered documents and failed to explain what additional evidence he would have presented at a hearing. *Id.* at 999. He was therefore unable to demonstrate substantial prejudice and meet his burden to vacate the arbitration award. *Id.*

¶ 27 The same is true in this case. Given the sixty-day window for arbitration, the new dates, September 3 and 4, limited the arbitrator's flexibility to further postpone the hearing. *See* § 13–22–215(3), C.R.S. 2014 (unless the parties consent to a later date, an arbitrator lacks authority to postpone the arbitration hearing to a time later than that required by the arbitration agreement). Nothing in the record suggests that Meister's impediments to travel—his poor health and the restrictions stemming from his federal indictment—were likely to disappear within the limited time remaining for conducting the hearing. We therefore perceive no substantial prejudice, and Meister points to none, that resulted from the arbitrator's decision to hold the hearing as scheduled.

¶ 28 Meister has also failed to specify what evidence he would have introduced through his testimony whether given electronically, by preservation deposition, or otherwise. Meister initially stated that he would testify generally about the matters in the complaint.[4] Although his counsel asked to supplement the record with more detail about Meister's anticipated testimony and the documents he would refer to, this never happened. Because of Meister's lack of specificity and his counsel's departure from the hearing without making an offer of proof, he has failed to demonstrate substantial prejudice on this point and thus has not established a basis for vacating the award under section 13–22–223(1)(c).

¶ 29 Meister also contends that he has a constitutional right to cross-examine witnesses at an arbitration hearing and that this right was violated when the arbitrator denied his renewed motion to appear electronically. We conclude that any error in this regard would be harmless in this instance because Meister's counsel was present at the arbitration hearing, could have cross-examined witnesses, and had ample opportunity to confer with Meister about such cross-examination before the hearing. Meister's counsel also could have requested a brief recess after defendants' one witness testified to confer by telephone with his client. Instead, Meister's counsel left the hearing before any testimony was presented, thereby waiving any rights to participate. *See Klein v. State Farm Mut. Auto. Ins. Co.,* 948 P.2d 43, 46–47 (Colo.App.1997) (statutory right to arbitration may be waived). Moreover, Meister has failed to identify any cross-examination that would have been elicited had he appeared electronically.

¶ 30 Finally, Meister briefly asserts that the district court erred in finding that Stout did not waive his right to arbitration. His two-sentence assertion is not an adequately developed argument, and we therefore decline to consider it. *See Barnett v. Elite*

4. The record before us does not include a transcript of the hearing. We therefore rely on the description of the hearing contained in the arbitration award, which is part of the record. It is well settled that in the absence of a complete record, we must presume the evidence supports the findings and conclusions of the trial court. *Hock v. N.Y. Life Ins. Co.,* 876 P.2d 1242, 1252 (Colo.1994).

*Props. of Am., Inc.,* 252 P.3d 14, 19 (Colo. App.2010).

### IV. Defendants Are Entitled to Attorney Fees on Appeal

¶ 31 Defendants may recover their attorney fees on appeal pursuant to the operating and purchase agreements and Colorado law. As prevailing parties, defendants are entitled to recover "all costs and reasonable and necessary attorneys' fees incurred ... relating to the arbitration" under the operating agreement. The purchase agreement, signed by Venti and Meister, also entitles Venti to recover its attorney fees "incur[red] by reason of ... [Meister's] failure to fulfill any of [his] agreements hereunder."

¶ 32 Further, because defendants have prevailed on appeal, they are also entitled to their attorney fees and costs in defending the arbitration award on appeal. *See Treadwell,* 222 P.3d at 403; *Kennedy v. King Soopers Inc.,* 148 P.3d 385, 390–91 (Colo.App.2006). Accordingly, we remand the case to the district court to determine the amount of fees and costs defendants reasonably incurred in this appeal.

### V. Conclusion

¶ 33 The judgment is affirmed, and the case is remanded as directed.

JUDGE HAWTHORNE and JUDGE BERNARD concur.